UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ANGELA MARIE BELL,

        Plaintiff,

v.                                           Case No.  8:21-cv-0034-SPF

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.
_____/

**ORDER**

Plaintiff seeks judicial review of the denial of her claim for a period of disability and supplemental security income ("SSI").  As the Administrative Law Judge's ("ALJ") decision was not based on substantial evidence and did not employ proper legal standards, the Commissioner's decision is reversed.

    **I.**    **Procedural Background**

Plaintiff applied for a period of disability and SSI (Tr. 172-77).  The Commissioner denied Plaintiff's claims both initially and upon reconsideration (Tr. 83, 101).  Plaintiff then requested an administrative hearing (Tr. 116-18).  Per Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified (Tr. 30-69).  Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and denied Plaintiff's claims for benefits (Tr. 12-29).  Subsequently, Plaintiff requested review from the Appeals Council, which it denied (Tr. 1-6).  Plaintiff then timely filed a complaint with this Court (Doc. 1).  The case is now ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

## II. Factual Background and the ALJ's Decision

Plaintiff was born on August 18, 1993 and was 26 when the ALJ denied her application (Tr. 22). She is a high school graduate with no work experience who claims she has been disabled since birth (*see* Tr. 37, 39-40, 185).[1] At the time of the ALJ's hearing, Plaintiff was living with her parents (Tr. 39). Plaintiff was diagnosed with type 1 diabetes when she was seven (Tr. 37, 39, 60). When she was 10, she was classified as a brittle diabetic with "significant neuropathy [,]" and doctors implanted an insulin pump and a continuous glucose monitor (*Id.*; Tr. 325). Plaintiff had lap band surgery in 2014 when she was 20, but she still struggles with obesity (Tr. 38). The medications Plaintiff has taken since childhood to treat her diabetes have caused pervasive tooth decay. This presented another challenge to controlling Plaintiff's blood sugar levels because it hurt her to eat (Tr. 36, 848-49). A week after Plaintiff filed her SSI application, she had all her teeth extracted (Tr. 741). Plaintiff alleges disability due to ADD, neuropathy, tachycardia, heart palpitations, chest pains, and abdominal migraines (Tr. 188).

In rendering the administrative decision, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity since December 13, 2018, her application date (Tr. 17). After conducting a hearing and reviewing the evidence of record, the ALJ determined Plaintiff had these severe impairments: tachycardia, diabetes mellitus with neuropathy,

---

[1] A claimant becomes eligible for SSI in the first month where he or she is both disabled and has an SSI application on file. 20 C.F.R. §§ 416.202(g), 416.203(a), 416.501; *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). Although Plaintiff's alleged onset date is her birthdate, the relevant period is from December 2018 (the month she filed her SSI application) through June 18, 2020 (the date of the ALJ's decision). 20 C.F.R. §§ 416.330, 416.335; *Moore*, 405 F.3d at 1211.

and obesity (*Id.*).  Notwithstanding the noted impairments, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 20).  The ALJ then concluded that Plaintiff retained a residual functional capacity ("RFC") to perform light work "except the claimant must be afforded the opportunity to s[it] and stand at will." (Tr. 19).  In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence (Tr. 20).

Given Plaintiff's background and RFC, a vocational expert ("VE") testified that Plaintiff could perform jobs existing in significant numbers in the national economy, such as survey worker, photocopy operator, and marker (Tr. 23).  The VE also testified that if Plaintiff's RFC was reduced to the sedentary exertional level, she could work as an order clerk, a document preparer, and an appointment clerk (Tr. 23-24).  Accordingly, based on Plaintiff's age, education, RFC, and the VE's testimony, the ALJ found Plaintiff not disabled (Tr. 24).

### III.   Legal Standard

To be entitled to benefits, a claimant must be disabled, meaning he or she must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or

which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3).

The Social Security Administration, to regularize the adjudicative process, promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. §§ 404.1520(a), 416.920(a). Under this process, the ALJ must determine, in sequence, the following: whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, i.e., one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404 Subpart P, Appendix 1; and whether the claimant can perform his or her past relevant work. If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience. 20 C.F.R. §§ 404.1520(a), 416.920(a). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. §§ 404.1520(g), 416.920(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. See 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938) (internal quotation marks omitted)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citations omitted).

In reviewing the Commissioner's decision, the court may not re-weigh the evidence or substitute its own judgment for that of the ALJ even if it finds that the evidence preponderates against the ALJ's decision. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Keeton*, 21 F.3d at 1066. Review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

**IV.   Analysis**

Plaintiff argues the ALJ (1) improperly weighed the March 2020 letter and May 2020 medical source statement regarding Plaintiff's limitations from her long-time

primary care physician Larry Canton, D.O.; and (2) ran afoul of Social Security Ruling ("SSR") 16-3p, which spells out the process for evaluating a claimant's subjective pain complaints (Doc. 31).

**A. Dr. Canton**

Plaintiff's first argument is that the ALJ did not have good cause to reject Dr. Canton's opinions (Doc. 31 at 10-12). As the Commissioner points out, however, Plaintiff relies on case law that applies Social Security Administration ("SSA") regulations that have since been revised (*Id.*).[2]

Before March 27, 2017, SSA regulations codified the treating physician rule, which required the ALJ to assign controlling weight to a treating physician's opinion if it was well supported and not inconsistent with other record evidence. *See* 20 C.F.R. § 416.927(c). Under the treating physician rule, if an ALJ assigned less than controlling weight to a treating physician's opinion, he or she had to provide good cause. *See Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178-79 (11th Cir. 2011).

Here, however, revised SSA regulations (published on January 18, 2017, and effective on March 27, 2017) apply because Plaintiff filed her claim on December 13, 2018 (*see* Tr. 15). As the SSA explained, "under the old rules, courts reviewing claims tended

---

[2] For instance, Plaintiff cites *Johnson v. Barnhart*, 138 F. App'x 266, 270 (11th Cir. 2005), in which the Eleventh Circuit reversed the district court and found that the ALJ erred in assigning greater weight to the opinion of a non-examining physician over a treating physician, and *Ledford v. Commissioner of Social Security,* No. 6:13-cv-166-Orl-TBS, 2014 WL 12623685, at *2 (M.D. Fla. Mar. 24, 2014), in which the district court remanded the plaintiff's case because the ALJ failed to state with particularity the weight she assigned to a treating physician's opinion and why (Doc. 31 at 10). The revised regulations, however, eliminate the treating physician rule. *See Harner v. Comm'r of Soc. Sec.*, 38 F.4th 892, 897 (11th Cir. 2022).

to focus more on whether the agency sufficiently articulated the weight we gave treating source opinions, rather than on whether substantial evidence supports our final decision ... these courts, in reviewing final agency decisions, are reweighing evidence instead of applying the substantial evidence standard of review, which is intended to be highly deferential to us." Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5853 (Jan. 18, 2017); *see also Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1259 n.4 (11th Cir. 2019). *Compare* §§ 404.1527(c), 416.927(c) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's medical opinion.") *with* 20 C.F.R. §§ 404.1520c(a), 416.920c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources."). The Eleventh Circuit recently affirmed that these new regulations eliminate the treating physician rule. *Harner*, 38 F.4th at 897 (noting that the Commissioner "determined that a change was required due to a shift away from physicians having a personal relationship with claimants and toward claimants consulting multiple doctors and care teams").

The new regulations require an ALJ to apply the same factors when considering the opinions from *all* medical sources. 20 C.F.R. § 416.920c(a). As to each medical source, the ALJ must consider: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) "other factors that tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. § 416.920c(c). But the first two factors are the most important: "Under the new rule, the SSA will consider

7

the persuasiveness of all medical opinions and evaluate them primarily on the basis of supportability and consistency." *Mackey v. Saul*, No. 2:18-cv-2379-MGL-MGB, 2020 WL 376995, at *4, n.2 (D.S.C. Jan. 6, 2020) (citing 20 C.F.R. § 404.1520c(a),(c)(1)-(2)) (while there are several factors ALJs must consider, "[t]he most important factors ... are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section).").

"Supportability" refers to the principle that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(1). "Consistency" refers to the principle that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(2). Put differently, the ALJ must analyze whether the medical source's opinion is (1) supported by the source's own records; and (2) consistent with the other evidence of record. *See Cook v. Comm'r of Soc. Sec.*, No. 6:20-cv-1197-RBD-DCI, 2021 WL 1565832, at *3 (M.D. Fla. Apr. 6, 2021), *report and recommendation adopted*, 2021 WL 1565162 (Apr. 21, 2021).

The new regulations also change the standards the ALJ applies when articulating his or her assessment of medical source opinions. As mentioned above, an ALJ need not assign specific evidentiary weight to medical opinions based on their source. *See Tucker v.*

*Saul*, No. 4:19-cv-759, 2020 WL 3489427, at *6 (N.D. Ala. June 26, 2020). While the ALJ must explain how he or she considered the supportability and consistency factors, the ALJ need not explain how he or she considered the other three factors.[3] 20 C.F.R. § 416.920c(b)(2). And, in assessing the supportability and consistency of a medical opinion, the regulations provide that the ALJ need explain only the consideration of these factors on a source-by-source basis – the regulations do not require the ALJ to explain the consideration of each opinion from the same source. *See* 20 C.F.R. § 416.920c(b)(1).

Here, Dr. Canton diagnosed Plaintiff with type 1 diabetes mellitus in September 2011, when she was seven, and has treated Plaintiff approximately once a month since then (*see* Tr. 338-426, 501-711, 726-79, 816-35, 921-92). At Dr. Canton's referral, Plaintiff sought treatment over the years from an endocrinologist, a podiatrist, a cardiologist, and an oral surgeon (*see* Tr. 323-37, 427-66, 845-53, 887-918). As the ALJ noted, many of Dr. Canton's treatment notes pre-date Plaintiff's application date and are not within the relevant period of December 2018 through June 2020 (*see* Tr. 20, 338-426, 501-711). During the relevant period, Dr. Canton treated Plaintiff for hypertension, a thyroid disorder, tachycardia, diabetes, ADD, and diabetes-related neuropathy and pain in her lower extremities (Tr. 726-52, 816-835, 921-83). Every month, Dr. Canton examined Plaintiff, refilled her Adderall prescription, performed a diabetic foot check (Plaintiff also saw a podiatrist once every eight weeks for foot care), and checked her mouth and throat

---

[3] The exception is when the record contains differing but equally persuasive medical opinions or prior administrative medical findings about the same issue. *See* 20 C.F.R. § 416.920c(b)(3).

9

(Plaintiff had tooth pain and extensive decay). Dr. Canton was on a care team with Plaintiff's endocrinologist Yuvraj Kumbkarni, M.D. to manage Plaintiff's diabetes and medications (*see* Tr. 779, 783). Dr. Canton prescribed test strips (among numerous other medications) and directed her to test her blood sugar levels 8 to 11 times per day.

On November 27, 2018, just weeks before Plaintiff applied for SSI benefits, Dr. Canton wrote a letter referring her to oral surgeon Thomas Boland, M.D. for extraction of all her teeth. He wrote to Dr. Boland that "[Plaintiff] has been a patient in our office for the past 18 years. She is a very brittle Diabetic who is on an Insulin Pump. She is also afflicted with Thyroid Disease, Peripheral Neuropathy, and Tachycardia." (Tr. 747). He described her diabetes as uncontrolled: "[Plaintiff's] blood sugar levels are very unpredictable. Her readings can go very low (less than 30) to very high (more than 400) extremely rapidly and without any warning. She has been critically hospitalized for this condition many times in the past." (*Id.*).

Dr. Canton's monthly treatment notes during the relevant period are standardized – the sections recapping Plaintiff's medical, family, and social history are identical from appointment-to-appointment, and his examination notes are also similar, as if he cut and pasted from his previous month's report. For example, under the heading "Neurologic" in the examination section of his notes, Dr. Canton wrote, without fail, that Plaintiff had "mild decreased sensation in both feet." (Tr. 729, 734, 756, 761, 766, 771) In the "Complaint" section of his notes, however, Dr. Canton recorded appointment-specific information. Plaintiff described her foot pain as a 7 out of 10 at her January 2019 appointment, and in February and March 2019, she noted she was losing even more

feeling in her feet (Tr. 726, 731, 736). Her feet continued to hurt in May 2019, and in July and August 2019, she characterized the pain as intense and constant (Tr. 816, 966, 971). She assessed her pain as 6 out of 10 in February 2020 (Tr. 926). This follows Plaintiff's pre-application medical records: In January 2012, when Plaintiff was 18, cardiologist Marilyn King, M.D. treated Plaintiff for chest pain and an abnormally high resting heart rate and noted Plaintiff had "peripheral neuropathy already and has loss of sensation in the bottoms of her feet." (Tr. 329, 336).

      Meanwhile, Dr. Kumbkarni observed in February 2019 that Plaintiff's "Type 1 diabetes mellitus is not well controlled. She has a fear of nocturnal hypoglycemia and as a result she eats at nighttime. She has profound nocturnal hypoglycemia. I have reduced the basal rate at midnight from 1.25 units an hour to 1 unit an hour." (Tr. 751). At a follow-up appointment in April 2019, Dr. Kumbkarni noted: "[Plaintiff] has been having hypoglycemic episodes which is followed by profound hyperglycemia. The basal rate in the early morning hours was reduced by 10%." (Tr. 783). The endocrinologist repeated his observation that Plaintiff's diabetes was not well controlled in July 2019, September 2019, and January 2020, each time adjusting her basal rate to account for her glucose monitoring since her last appointment (Tr. 855-78).

      Against this treatment backdrop, Dr. Canton issued a report in letter format in March 2020 supporting Plaintiff's benefits application (Tr. 984-88). He opined that Plaintiff is "physically and psychologically unable to perform activities on a sustained, regular basis, twenty-one (21) days a month, eight (8) hours a day, five (5) days a week in

11

a normal, competitive work environment." (Tr. 988). He discussed his treatment of Plaintiff and her condition at length:

> She has persistent pain, weakness and numbness to her lower extremities, with the inability to stand or walk for any prolonged period and sitting tends to also aggravate her pain and numbness symptoms. She experiences frequent recalcitrant headaches, which can last for several hours to days in length. The activities she is able to perform are completely dependent on how she feels that particular day. She has both good and bad days but she has no idea which type of day will be present upon awakening on any specific day. When she is having a bad day, she is totally incapacitated. She also has trouble sleeping at night due to her discomfort, intermittent episodic seizures and her widely fluctuating blood glucose levels, which range from 20 to over 600 in very short periods of time and occur most days, usually without warning, despite use of her insulin pump and a Dexcom. Her endocrinologist has been attempting to monitor her condition closely but these rapid and widely fluctuating glucose levels occur on most days anyway. She suffers from muscle weakness and pain, mainly to her lower extremities. Ms. Bell needs to rest and take frequent naps during the day due to her malaise and bouts of extreme fatigue. Ms. Bell's subjective complaints and limitations are consistent with her chronic diagnosed medical conditions as well as being supported by her various specialist assessments and monthly evaluations. Ms. Bell has been compliance, and currently taking her prescribed medications and following orders outlined by her doctors.

(Tr. 987).

Dr. Canton followed this with a medical source statement in May 2020 (Tr. 990-92). He reiterated that treatment has not relieved Plaintiff's constant neuropathy pain, and she can only sit for 15 minutes and stand for 10 minutes at a time (*Id.*). Dr. Canton opined that Plaintiff could sit and stand/walk for less than two hours each in an eight-hour workday, she could lift no amount of weight, and she could never twist, stoop, crouch, or climb (*Id.*). Her impairments affected her ability to reach, handle, finger, feel, and push/pull (*Id.*).

The ALJ found Dr. Canton's opinions "unpersuasive. These findings are not consistent with or supported by the record evidence showing conservative treatment for

[Plaintiff's] physical impairments along with mostly normal results on physical examinations, aside from slight decreased sensation in her feet." (Tr. 22). The ALJ continued: "Moreover, imaging/laboratory results d[o] not suggest significantly limiting musculoskeletal issues, as they showed only mild pathology and [ ] improving A1c levels." (*Id.*). The ALJ's consideration of Dr. Canton's opinions appears to track the new regulations' requirements in that the ALJ discusses both supportability and consistency. The ALJ's stated reasons for finding a lack of supportability and consistency, however, are not supported by substantial evidence.

Regarding the supportability factor, the ALJ states in a conclusory fashion that Dr. Canton's examinations yielded mostly normal results (Tr. 22), and he characterizes Plaintiff's treatment as "conservative." In contrast, Dr. Canton's notes anthologize his two decades of treatment as Plaintiff's diabetes grew progressively more difficult to manage and led to neuropathic pain and numbness in her feet, extraction of all her teeth at 25, an implanted insulin pump, tachycardia, numerous ER visits and hospital admissions and exacerbated her obesity despite lap band surgery. Dr. Canton described Plaintiff's condition in his November 2018 introductory letter to Dr. Boland before the oral surgeon extracted her teeth. In short, he wrote that Plaintiff is a very brittle diabetic with extreme and unpredictable swings in her blood sugar levels and peripheral neuropathy. The ALJ, however, zooms in on Dr. Canton's statements that Plaintiff had only mild decreased sensation in her feet. He does not consider the numerous and unpredictable "bad days" that Dr. Canton opined Plaintiff experiences due to her diabetes-related impairments (Tr. 787). Although the ALJ need not address every aspect of Dr.

13

Canton's medical opinions, under these circumstances the ALJ's supportability finding is not backed by substantial evidence.

Regarding consistency, in finding Dr. Canton's opinions unpersuasive, the ALJ relied on the lack of laboratory findings and her "improving A1c levels." (Tr. 22). The ALJ also stated: "The state agency physician opined that the claimant could perform light exertional work with additional postural and environmental limitations (Ex. 7A). The undersigned finds the prior administrative medical findings the of [sic] state agency physician to be persuasive." (Tr. 22). Exhibit 7A does not exist, however. The undersigned's best guess is that the ALJ was referring to the form completed by state agency physician Phillip Matar, M.D., whose RFC assessment at the reconsideration level is in the record at Exhibit 4A (Tr. 93-97). In April 2019, Dr. Matar reviewed Plaintiff's medical evidence to date and concluded she was capable of light work (*Id.*). But he did not review Dr. Canton's March 2020 letter, his May 2020 medical source statement, or Drs. Canton and Kumbkarni's treatment notes from mid-2019 into 2020, because they did not exist.

Although Dr. Kumbkarni recorded some improvement in Plaintiff's blood sugar levels occasionally, he consistently noted his concerns about the wide fluctuations in her levels despite medication compliance. *See Mayfield v. Comm'r of Soc. Sec.*, No. 7:20-cv-1040-ACA, 2021 WL 5300295, at * 5 (N.D. Ala. Nov. 15, 2021) (reversing Commissioner's decision for failing to identify a "real inconsistency" or explain supportability analysis); *cf. Simon II*, 7 F.4th at 1094 (remanding under treating physician rule because "highly generalized statements . . . ordinarily will not be an adequate basis

14

to reject a treating physician's opinion"). And Dr. Canton echoed this concern. At bottom, the ALJ does not acknowledge Plaintiff's treatment across medical disciplines for insulin-dependent diabetes and related impairments since childhood (a diagnosis the ALJ does not dispute), and her care team's consistent characterization of her diabetes as uncontrolled despite her compliance with treatment. Accordingly, substantial evidence does not support the ALJ's finding regarding the consistency of Dr. Canton's medical records.[4]

### B. Plaintiff's Subjective Complaints

The Court's finding above – that the ALJ's consideration of Dr. Canton's opinions is unsupported by substantial evidence – dovetails into Plaintiff's next argument that the ALJ did not properly evaluate her subjective pain complaints. Because the ALJ did not adequately explain the persuasiveness of Dr. Canton's opinions, the undersigned cannot assess if substantial evidence supports the ALJ's assessment of Plaintiff's subjective symptoms. To backtrack, the Eleventh Circuit has crafted a pain standard to apply to claimants who attempt to establish disability through their own testimony of subjective complaints. The standard requires evidence of an underlying medical condition and either (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition, or (2) that the objectively determined medical condition is of such a severity that it can reasonably be expected to give rise to the alleged pain. *See Holt v.*

---

[4] In addition to identifying three jobs Plaintiff can perform at the light RFC level, the ALJ also relied on the VE's testimony that there are jobs at the sedentary exertion level that Plaintiff can perform (Tr. 23-24). Nonetheless, on remand, the ALJ is directed to reconsider his RFC finding in light of Dr. Canton's opinions.

*Sullivan*, 921 F.2d 1221 (11th Cir. 1991). When the ALJ decides not to credit a claimant's testimony as to her pain, he must articulate explicit and adequate reasons. *Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995).

Social Security Ruling 16-3p cautions that "subjective symptom evaluation is not an examination of an individual's character." *Id.* Adjudicators, as the regulations dictate, are to consider all the claimant's symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence in the record. *Id.* The regulations define "objective evidence" to include medical signs shown by medically acceptable clinical diagnostic techniques or laboratory findings. 20 C.F.R. §§ 404.1529, 416.929. "Other evidence," again as the regulations define, includes evidence from medical sources, medical history, and statements about treatment the claimant has received. *See* 20 C.F.R. §§ 404.1513, 416.913. Subjective complaint evaluations are the province of the ALJ. *Mitchell v. Comm'r of Soc. Sec.*, 771 F.3d 780, 782 (11th Cir. 2014).

Here, Plaintiff testified that the pain and burning sensation in her feet interfere with her ability to work the most out of her impairments (Tr. 44). She wears orthotics, visits a podiatrist every eight weeks, and takes Lyrica for her foot pain (Tr. 47-48). She testified that "[w]hen my sugar gets bottomed out, it makes it hard to focus, and my hands will shake. And it just like will drain my energy completely" (Tr. 49), and her vision blurs (Tr. 64). Regarding daily activities, Plaintiff testified she does not cook, do laundry, clean the house, or grocery shop because these chores require her to be on her feet too long (Tr. 52, 208). She drives her dad's car to the pharmacy twice a week to pick up medications (Tr.

16

53). She spends "most of the day like on the couch with my feet up." (Tr. 56) Her CGM alarm sends an alert to her phone when her blood sugar levels dip below 70, which occurs up to five times per day (Tr. 60). Between dealing with fluctuations in her blood sugar levels, Plaintiff reads, watches, TV, and naps (Tr. 57-58). She attends church weekly (Tr. 210).

The ALJ relied on largely boilerplate language in assessing Plaintiff's subjective pain complaints:

> After careful consideration of the evidence, the undersigned finds claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

(Tr. 20). This language directly addresses the Eleventh Circuit's pain standard and is not improper *if* supported by substantial evidence. *See Danan v. Colvin*, 8:12-cv-7-T-27TGW, 2013 WL 1694856, at * 3 (M.D. Fla. Mar. 15, 2013). Considering the Court's directive for the ALJ to reassess Dr. Canton's treatment records on remand, the ALJ should also reconsider whether substantial evidence underpins his evaluation of Plaintiff's subjective pain complaints.

### V.   Conclusion

Accordingly, for the foregoing reasons, it is

ORDERED:

1.   The Commissioner's decision is reversed, and the case is remanded to the agency for further administrative proceedings consistent with this Order.

2.  The Clerk is directed to enter final judgment in favor of Plaintiff and close the case.

DONE in Tampa, Florida, on August 24, 2022.

*[signature]*

SEAN P. FLYNN
UNITED STATES MAGISTRATE JUDGE